**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SABRINA ERSERY-ANDREWS, on behalf of herself and the class members described herein, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CAPITAL LINK MANAGEMENT, LLC; and IMEDIA BRANDS, INC., d/b/a SHOPHQ and EVINE, and f/k/a VALUE VISION INTERNATIONAL, INC., VALUE VISION MEDIA, INC., and EVINE LIVE, INC., | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1.     Plaintiff Sabrina Ersery-Andrews brings this action against Defendants Capital Link Management, LLC and iMedia Brands, Inc., to secure redress for a series of text message calls which Capital Link Management, LLC transmitted to her cell phone on behalf of iMedia Brands, Inc.  The text message calls both sought to collect money and sought, by asking Plaintiff to reinstate her account, to sell products and services of iMedia Brands, Inc.  They were placed despite repeated instructions from Plaintiff to stop texting, thereby invading her privacy and causing the loss of time, effort and money.

2.     Plaintiff alleges violation of:

a.     The internal "do not call" requirements of the Telephone Consumer Protection Act, 47 U.S.C.  §227 ("TCPA"), and implementing Federal Communications Commission ("FCC") regulations, 47 C.F.R. §64.1200.

b.     The Fair Debt Collection Practices Act, 15 U.S.C. §§1692c and 1692g, ("FDCPA"), and implementing Consumer Financial Protection Bureau ("CFPB") Regulation F, 12 C.F.R. part 1006.

      c.      The Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA").

3.      In the early 1990s, Congress enacted the TCPA to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.      The TCPA authorizes the FCC to issue regulations allowing people to direct a telemarketer to cease calling and place their numbers on an "internal do not call list" so they are not called again.

5.      The TCPA provides that each person who receives more than one call within 12 months after giving such an instruction to the telemarketer and allowing a reasonable time not exceeding 31 days to elapse to recover damages of at least $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

6.      From January 2021 until June 2021 alone, approximately 26.4 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited July 13, 2021). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 1367 and 15 U.S.C. §1692k. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

8.      Personal jurisdiction exists under 735 ILCS 5/2-209, in that Defendants have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.  The offending text message calls were sent to an Illinois area code and received in Illinois.

9.      Venue in this District is proper for the same reason.

10.      The receipt of numerous unwanted telemarketing calls satisfies Article III.

*Gadelhak v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2020).

**PARTIES**

11.     Plaintiff Sabrina Ersery-Andrews is a resident of Chicago, Illinois.

12.     Defendant Capital Link Management, LLC, is a limited liability company organized under New York law with its principal place of business at 50 Alcona Ave., Amherst, NY 14226. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

13.     Defendant Capital Link Management, LLC operates a collection agency, using the mails, telephone and Internet to collect consumer debts allegedly owed to others. It has a web site (https://capitallinkmanagement.com/) on which it states it is a "Full Service Collection Agency."

14.     Defendant Capital Link Management, LLC is a debt collector as defined in the FDCPA.

15.     Defendant, iMedia Brands, Inc., is a corporation organized under the law of Minnesota with its principal office at 6740 Shady Oak Road, Eden Prairie, MN 55344–3433. It does business as ShopHQ and Evine. It was formerly known as ValueVision International, Inc., ValueVision Media, Inc., and EVINE Live Inc.

16.     Defendant iMedia Brands, Inc., describes itself in its SEC filings as "a leading interactive media company capitalizing on the convergence of entertainment, ecommerce, and advertising. The Company owns a growing, global portfolio of Entertainment, Consumer Brands and Media Commerce Services businesses that cross promote and exchange data with each other to optimize the engagement experiences it creates for advertisers and consumers. The Company's growth strategy revolves around its ability to increase its expertise and scale using interactive video to engage customers within multiple business models and multiple sales channels. The Company believes its growth strategy builds on its core strengths and provides an advantage in these marketplaces. [¶] The Company's entertainment television networks are ShopHQ, ShopBulldogTV, ShopHealthHQ and the newly acquired 123tv. ShopHQ is the Company's flagship, nationally

distributed shopping entertainment network that offers a mix of proprietary, exclusive, and name-brand merchandise in the categories of Jewelry and Watches, Home, Beauty and Health, and Fashion and Accessories, directly to consumers 24 hours a day using engaging interactive video. . . ." Report on SEC Form 10-Q for the quarterly period ended October 30, 2021, original page 7.

17.     The nature of ShopHQ and the products sold are such that the resulting transactions are for personal, family or household purposes and not for business purposes.  Businesses do not use television programs such as ShopHQ to make purchases.

## FACTS

18.     Plaintiff had a ShopHQ/ Evine account.

19.     The purchases made by Plaintiff on such account were for personal, family or household purposes and not for business purposes.

20.     Plaintiff is the subscriber and principal user of a cell phone with number 773-xxx-2904.  Plaintiff pays the phone bills for the cell phone.

21.     The majority of the calls made from and received on the  phone are non-business calls. The phone is therefore "residential."

22.     Plaintiff received on her cell phone the following text messages, each of which was sent by Capital Link Management, LLC on behalf of iMedia Brands, Inc.:

   a.     5/26/2022, at 1:31 PM, from 716-748-7801: "EVINE SHOP HQ: Sabrina Andrews, your account has an outstanding balance of. Pay just to have your account removed from collections and reinstated.  Please call CLM 1-833-524-3202. Disclosure.  Not resolving may start to impact your credit.   This communication is from a debt collector.  If you wish to no longer receive text messages, please reply STOP."

   b.     5/27/2022, at 10:48 AM, from 716-270-1842: "Special Offer Fix credit today: Sabrina Andrews, your account was transferred to our Pre Legal Collections Team. Balance is $370.29. Close your account for $148.12 or set

up a hardship payment plan. Please call: 1-833-524-3202. Disclosure. This may begin to negatively impact your credit. This communication from a debt collector and any information obtained may be used for such purposes. If you wish to no longer receive text messages, please reply STOP."

c.    6/16/2022, at 1:37 PM, from 323-774-1429: "Sabrina Andrews, Your Shop HQ Evine account was placed with CLM. Balance owed is $370.29. Our client will remove you from collections and reinstate your account if you pay $185.15 today. Please call 1-833-524-3202. Disclosure: Resolving this account may repair or prevent this from negatively impacting your credit report. This communication from a Debt Collector and any information obtained may be used for such purposes.  If you wish to no longer receive text messages, please reply STOP."

d.    7/13/2022, at 9:43 AM, from 716-270-2156: "Account: Evine Shop HQ Consumer: Sabrina Andrews Outstanding{{(balance}} Settlement offer: $148.12. Please call: 1-833-524-3202.  Due date: 07/13/2022 Once paid, your account will be reinstated.  Disclosure: This communication from a debt collector and any information obtained may be used for such purposes. CapitalLinkManagement.com. If you wish to no longer receive text messages, please reply STOP."

e.    8/10/2022, at 1:32 PM, from 716-306-5400: "Hi Sabrina Andrews Your account is past due and has been transferred to CLM for Debt Collections. Current balance is $370.29. Please call 1-877-328-8356. CapitalLinkManagement.com.  This communication is from a debt collector, any information  obtained will be used for that purpose. If you wish to no longer receive text messages, please reply STOP."

f.    8/29/2022, at 2:19 PM, from 716-270-2163: "Hi Sabrina Andrews, Our

Client is offering to close your account for 50% off. Account: Evine Shop HQ Balance: $370.29. If interested please call Mr. Roth at 1-877-328-8356. CapitalLinkManagement.com. The communication is from a debt collector. This is an attempt to collect a debt. If you wish to no longer receive text messages, please reply STOP."

g.   9/13/2022, at 2:40 PM, from 716-526-6123: "Hi Sabrina Andrews, Your Shop HQ/Evine online tele shopping account has an outstanding balance of $370.29. Please call today, 1-877-328-8356. Once paid all negative marks will be removed and your account will be reinstated. CapitalLinkManagement.com. This communication is from a debt collector. This is an attempt to collect a debt. If you wish to no longer receive text messages, please reply STOP."

23.    On information and belief, all of the callback numbers in the messages are used by Defendant Capital Link Management, LLC, as is the website.

24.    Plaintiff responded "STOP" to each text message within seconds of its receipt.

25.    The messages did not stop.

26.    The ability to respond "stop" to a text message sent by a debt collector for collection purposes is required by CFPB Regulation F, 12 C.F.R. §1006.6(e), which provides:

> (e) Opt-out notice for electronic communications or attempts to communicate. A debt collector who communicates or attempts to communicate with a consumer electronically in connection with the collection of a debt using a specific email address, telephone number for text messages, or other electronic-medium address must include in such communication or attempt to communicate a clear and conspicuous statement describing a reasonable and simple method by which the consumer can opt out of further electronic communications or attempts to communicate by the debt collector to that address or telephone number. The debt collector may not require, directly or indirectly, that the consumer, in order to opt out, pay any fee to the debt collector or provide any information other than the consumer's opt-out preferences and the email address, telephone number for text messages, or other electronic-medium address subject to the opt-out request.

27.    The Official Interpretation to 12 C.F.R. §1006.6(e), which is itself a regulation issued pursuant to notice and comment rulemaking, states:

1. In general. Section 1006.6(e) requires a debt collector who communicates or attempts to communicate with a consumer electronically in connection with the collection of a debt using a specific email address, telephone number for text messages, or other electronic-medium address to include in such communication or attempt to communicate a clear and conspicuous statement describing a reasonable and simple method by which the consumer can opt out of further electronic communications or attempts to communicate by the debt collector to that address or telephone number. See comment 6(d)(4)(ii)(C)–1 for guidance on the meaning of clear and conspicuous. See comment 6(d)(4)(ii)(C)(4)–1 for guidance on the meaning of reasonable and simple. The following examples illustrate the rule.

> i. Assume that a debt collector sends a text message to a consumer's mobile telephone number. The text message includes the following instruction: "Reply STOP to stop texts to this telephone number." Assuming that it is readily noticeable and legible to consumers, this instruction constitutes a clear and conspicuous statement describing a reasonable and simple method to opt out of receiving further text messages from the debt collector to that telephone number consistent with §1006.6(e). No minimum type size is mandated. . . .

28. By seeking reinstatement of Plaintiff's account as well as collection of money allegedly due, the text messages constituted advertising and telemarketing as well as debt collection.

29. The settlement offers and the offers to reinstate Plaintiff's account were authorized by iMedia Brands, Inc.

30. Both Capital Link Management, LLC and iMedia Brands, Inc., are liable for the text message calls.

31. Unless enjoined, Defendant Capital Link Management, LLC will continue to place such calls. It follows a policy and practice of placing multiple text message calls to the same consumer.

32. Defendants' conduct violated the privacy rights of Plaintiff, in that she was subjected to annoying and harassing calls. Defendants' calls intruded upon the rights of Plaintiff to be free from invasion of her interest in seclusion.

33. Defendants' conduct harassed Plaintiff and wasted her time, in that she had to devote energy to addressing and/or otherwise responding to unwanted text message calls.

34. In addition to Plaintiff's time, the unwanted calls:

> a. Cost money to receive,
>
> b. Caused reduction and loss of battery life,

-7-

      c.      Cost electricity required to recharge Plaintiff's cell phone, and

      d.      Are annoying.

## COUNT I – TELEPHONE CONSUMER PROTECTION ACT AND FCC REGULATIONS

35.     Plaintiff incorporates by reference paragraphs 1-34.

36.     This claim is against both Defendants.

37.     The TCPA, 47 U.S.C. §227(c), authorizes the FCC to issue regulations requiring a person who requests a telemarketer to stop calling to be placed on an internal "do not call list" maintained by the telemarketer. The telemarketer must honor the request.

38.     47 C.F.R. §64.1200(d) provides:

(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The

-8-

telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . .

39.     "Telemarketing" is defined in 47 C.F.R. §64.1200(f)(13) as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  Asking someone to reinstate a ShopHQ account necessarily is for the purpose of encouraging the purchase of property, goods, or services.

40.     In the case of a caller that is both a debt collector and a telemarketer and thus subject to Regulation F as well as FCC regulations, a "reasonable period" is one day.

41.     Statutory damages for each call placed in violation of these restrictions on are $500 per call and up to $1,500 per call if the violation is determined to be willful.  47 U.S.C. §227(c)(5) provides:

(5)     Private right of action

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A)     an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B)     an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C)     both such actions.

42.     By placing text message calls to Plaintiff's phone after she texted "stop," Defendant

Capital Link Management, LLC violated the TCPA.

43.      Defendant iMedia Brands, Inc., is liable for such violations.

44.      At least the June 16, 2022 and later calls violated the internal "do not call" requirements of the TCPA. If a reasonable period is governed by Regulation F requirements, the May 27, 2022 and later calls violated the TCPA.

<u>**CLASS ALLEGATIONS**</u>

45.      Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

46.      The class consists of (a) all individuals (b) who received two or more text message calls placed by Capital Link Management, LLC on behalf of iMedia Brands, Inc., (c) after having instructed Capital Link Management, LLC to stop calling, (d) within a 12 month period (e) one of which calls was received on or after a date 4 years prior to the filing of this action.

47.      Plaintiff may alter the class definition to conform to developments in the case and discovery.

48.      On information and belief, the class has more than 40 persons and is so numerous that joinder of all members is not practicable. No debt collector or telemarketer secures the use of equipment to send text messages to place such calls to less than 40 persons.

49.      There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.      The applicability of the TCPA to the text message calls placed by Capital Link Management, LLC on behalf of iMedia Brands, Inc.;

      b.      Whether Capital Link Management, LLC violated the TCPA and FCC regulations;

      c.      The liability of iMedia Brands, Inc., for such violations;

      d.      The appropriate damages.

50.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

51.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and TCPA litigation.

52.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.     Individual actions are not economically feasible;

        b.     Class actions are necessary to deter telemarketing abuse.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.     Statutory damages of $1,500 per call;

        ii.     An injunction against further calls;

        iii.     Costs;

        iv.     Such other or further relief as is proper.

## COUNT II  – FAIR DEBT COLLECTION
## PRACTICES ACT  – §1692c  – AND REGULATION F

53.     Plaintiff incorporates by reference paragraphs 1-34.

54.     This claim is against Capital Link Management, LLC.

55.     Defendant Capital Link Management, LLC violated 15 U.S.C.  §1692c and Regulation F by placing text message calls for collection purposes to persons who responded by asking that calls cease, by texting back "stop" or otherwise.

## CLASS ALLEGATIONS

56.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

57.     The class consists of (a) all individuals with numbers assigned to Illinois area codes (b) who received one or more text message calls placed by Capital Link Management, LLC on behalf of iMedia Brands, Inc., (c) after having instructed Capital Link Management, LLC to stop calling, by texting back "stop" or otherwise, (d) which subsequent calls were placed during a period beginning 1

year prior to the filing of this action and ending 20 days after the filing of this action.

58.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

59.     On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

60.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether Capital Link Management, LLC fails to comply with the optout requirements of Regulation F.

61.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

62.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

63.     A class action is superior for the fair and efficient adjudication of this matter, in that:

       a.     Individual actions are not economically feasible.

       b.     Members of the class are likely to be unaware of their rights;

       c.     Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant Capital Link Management, LLC for:

       (1)     Statutory damages;

       (2)     Attorney's fees, litigation expenses and costs of suit;

       (3)     Such other and further relief as the Court deems proper.

### COUNT III – FAIR DEBT COLLECTION PRACTICES ACT – §1692g

64.     Plaintiff incorporates by reference paragraphs 1-34.

65.     This claim is against Capital Link Management, LLC.

-12-

66.     The text messages constituted "communications" in connection with the collection of a debt.

67.     The FDCPA, 15 U.S.C. §1692g, provides:

(a)     Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    (1)     the amount of the debt;

    (2)     the name of the creditor to whom the debt is owed;

    (3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4)     a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. . . .

68.     The "notice of debt" thus provides Plaintiff with information necessary to dispute a debt or refuse to pay or direct cessation of communications in writing.

69.     The text message calls set forth above were the first communications Plaintiff received from Capital Link Management, LLC, concerning the debt described therein.

70.     Plaintiff received no "notice of debt" from Capital Link Management, LLC.

71.     On information and belief, no "notice of debt" was sent to Plaintiff by Capital Link Management, LLC.

72.     On information and belief, it is the practice of Capital Link Management, LLC to not send a "notice of debt" no later than 5 days after transmitting a text message to a consumer.

73.     Defendant Capital Link Management, LLC, thereby violated 15 U.S.C. §1692g.

## CLASS ALLEGATIONS

74.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

75.     The class consists of (a) all individuals with numbers assigned to Illinois area codes (b) who received a text message call placed by Capital Link Management, LLC on behalf of iMedia Brands, Inc., (c) who were not sent a "notice of debt" before of within 5 five days after the text message call, (d) who thereafter received one or more additional text message calls, (e) where the first text message call was placed during a period beginning 1 year and 5 days prior to the filing of this action and ending 20 days after the filing of this action.

76.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

77.     On information and belief, there are more than 40 class members, and the  class is so numerous that joinder of all members is not practicable.

78.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common question is whether Defendant Capital Link Management, LLC engages in a practice of failing to send a "notice of debt" within 5 days after placing an initial text message call.

79.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

80.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

81.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights;

      c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

-14-

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant Capital Link Management, LLC for:

(1)     Statutory damages;

(2)     Attorney's fees, litigation expenses and costs of suit;

(3)     Such other and further relief as the Court deems proper.

## COUNT IV – ILLINOIS CONSUMER FRAUD ACT

82.     Plaintiff incorporates paragraphs 1-44, 54-55, and 66-73.

83.     This claim is against both Defendants.

84.     Defendant Capital Link Management, LLC engaged in unfair acts and practices, in violation of 815 ILCS 505/2, by:

a.     Placing repeated text message calls to Plaintiff and others, so as to harass Plaintiff and others, deprive them of the use of his cell phone, and cause unwanted interruptions to their lives and use of their time. Defendant's conduct forced Plaintiff and others to bear the burden of receiving unwanted advertisement calls, and gave Defendant an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail.

b.     Systematically disregarding instructions not to call.

c.     Violating the TCPA and FCC regulations, which establish public policy;

d.     Violating the FDCPA and CFPB regulations, which also establish public policy.

85.     Defendant Capital Link Management, LLC engaged in such practices in the course of trade and commerce.

86.     Defendant iMedia Brands, Inc., is liable as the principal of Capital Link Management, LLC.

WHEREFORE Plaintiff requests the Court grant the following relief in favor of Plaintiff and the class and against Defendants:

-15-

        i.        Actual damages;

        ii.        Punitive damages;

        iii.        An injunction against further calls;

        iv.        Attorney's fees, litigation expenses and costs;

        v.        Such other or further relief as is proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Heather A. Kolbus (ARDC 6278239 )
Julia Ozello (ARDC 6336504)
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

T:\39018\Pleading\Complaint_Pleading.WPD